In Re: ADMINISTRATIVE ORDER NO. 1–MD–2003

Appeal of: Honorable James P. Troutman, Clerk of Courts of the Common Pleas of Berks County.

Commonwealth Court of Pennsylvania.

Argued Dec. 8, 2004.
Decided Sept. 13, 2005.

---

8. Based on our resolution of the first issue raised herein, we need not address the Township's remaining two issues.

**1050**

Daryl F. Moyer, Hamburg, for appellant, James P. Troutman.

David R. Eshelman, Reading, for appellee, Unrepresented ARD Defendants.

Christopher D. Carusone, Harrisburg, for amicus curiae, Attorney General of Pennsylvania.

BEFORE: COLINS, President Judge, and McGINLEY, Judge PELLEGRINI, Judge FRIEDMAN, Judge COHN JUBELIRER, Judge SIMPSON, Judge and LEAVITT, Judge.

OPINION BY President Judge COLINS.[1]

James P. Troutman (Troutman), the Clerk of Courts of Berks County, appeals the decision of the Court of Common Pleas of Berks County (common pleas court) that dismissed Troutman's exceptions to an administrative order (Administrative Order) of the common pleas court. The Administrative Order directed Troutman to seal the court records of any criminal defendant whose criminal history is ordered expunged upon successful completion of the Accelerated Rehabilitative Disposition (ARD) program. Troutman claims the Administrative Order requires him to violate his duty as clerk of courts to maintain court records for public inspection.

On August 27, 2003, the common pleas court modified its "Order for Dismissal and Expungement" (Expungement Order) for criminal defendants who have successfully completed ARD. The modified Expungment Order provides, "The Clerk of Courts shall seal the entire record and Court Information Management shall seal the electronic records to prohibit public access to them." The common pleas court's practice prior to August 27, 2003 is not clear from the record. However, it is undisputed that the modification was a departure from the common pleas court's prior practice respecting ARD expungement orders. Troutman maintains that

---

1. This opinion was reassigned to this author on July 8, 2005.

expungement orders issued before August 27, 2003 were directed to the records of law enforcement agencies and not to the records of the court.

On November 3, 2003, President Judge Scott D. Keller, in his capacity as executive and administrative head of the common pleas court under the Judicial Code, 42 Pa.C.S. § 325(e)(1), issued the Administrative Order, No. 1–MD–2003, providing:

> AND NOW, the 3rd day of November, 2003, it is hereby ORDERED AND DECREED that the Clerk of Courts is directed to immediately comply with and execute the procedures outlined in Expungement Orders of the Court of Common Pleas of Berks County. Failure to implement the Orders may subject the Clerk of Courts, James Troutman, to contempt proceedings.

(Common pleas court opinion, p. 3.)

On November 12, 2003, Troutman filed exceptions to the Administrative Order. Troutman claimed the Administrative Order violates the Criminal History Record Information Act, 18 Pa.C.S. §§ 9101–9183 (Criminal Records Act). Troutman argued that among other records, the Criminal Records Act prohibits expungement of public records maintained by the court.

Based on Troutman's exceptions, the president judge ordered a hearing on Troutman's exceptions and appointed a panel of three judges.[2] The president judge appointed counsel to represent criminal defendants who had successfully completed ARD (Expungement Defendants) because he believed they should partici-

pate as *amicus curiae* in the hearing. Further, the president judge published a notice in the Berks County Law Journal inviting the filing of *amicus curiae* briefs on the issues raised by Troutman's exceptions.

On January 21, 2004, a hearing on Troutman's exception was held. Troutman testified that his office was in compliance with the Administrative Order; to wit, whenever an expungement order was received the appropriate records were removed from the clerk's office, placed in boxes, and sealed for storage. Cathy M. Marburger, Deputy Court Administrator, testified that upon receipt of an expungement order the electronic record on the computerized docket was also sealed. Further testimony also established that the criminal history of expungement defendants is preserved for access by certain law enforcement agencies.[3] The panel denied Chief Deputy Attorney General for the Commonwealth Ronald Stanko's request to testify, finding that he sought to offer legal argument rather than factual testimony. Both Troutman and the Expungement Defendants filed post-hearing briefs. Additionally, the Pennsylvania Newspapers Association filed a post-hearing *amicus curiae* brief in support of Troutman.

On March 30, 2004, the common pleas court issued a memorandum opinion, without a separate order, dismissing Troutman's exceptions. The panel held that the Criminal Records Act does not apply to court records, Troutman lacked standing to object to the Administrative Order, and

---

**2.** The judges assigned to the panel were the Honorable Linda K.M. Ludgate, the Honorable Thomas G. Parisi, and the Honorable Mary Ann Campbell.

**3.** Such access to criminal histories is apparently allowed because ARD is available only to first-time criminal offenders. Vehicle

Code, 75 Pa.C.S. § 3807(1)(2)(i); Section 17 of The Controlled Substance, Drug, Device, and Cosmetic Act, Act of April 14, 1972, P.L. 233, *as amended,* 35 P.S. § 780–117. *See generally,* Pa. R.Crim. P. Ch. 3, introductory cmt. (discussing primary purpose and procedural framework of ARD).

the expungement of ARD defendants' criminal records was lawful. Thereafter, Troutman appealed to this Court. Consequently, the common pleas court filed its second memorandum opinion in response to Troutman's Rule 1925(b) statement.[4]

The issues before this Court are whether Troutman has standing to challenge the Administrative Order and whether this Court has jurisdiction to consider Troutman's challenge.

■ "Any party seeking judicial resolution of a controversy in this Commonwealth must, as a prerequisite, establish that he has standing to maintain the action." *Dauphin County Public Defenders Office v. Court of Common Pleas of Dauphin County,* 578 Pa. 59, 63, 849 A.2d 1145, 1148 (2004) (internal quotations and citations omitted). In order to have standing to challenge an official order, "a party must be aggrieved by the action or order." *Commonwealth v. J.H.,* 563 Pa. 248, 252, 759 A.2d 1269, 1271 (2000). "For a party to be aggrieved, it must have a substantial, direct, immediate, and not remote interest in the subject-matter of the litigation." *Id.* In order for Troutman to have a substantial interest, "there must be a discernible adverse effect to some interest other than in the abstract." *Id.* (internal citations omitted). This Court can discern no adverse effect to Troutman, beyond that of the common citizens interest in seeing the law followed. It is true that Troutman has sworn an oath to maintain the records of the court, but "standing is not conferred via a party's relationship to the proceed-

ings." *Id.* Without some injury Troutman cannot have standing.

■ In addition, the Criminal Records Act confers no authority on Troutman to enforce its provisions or exercise independent discretion. In fact, the Criminal Records Act confers the opportunity to challenge expungement orders on the district attorneys by requiring that they be notified prior to the entry of an expungement order. 18 Pa.C.S. 9122(f).[5] Troutman, on the other hand, plays only "a ministerial part" in the expungement procedure, which is not enough to confer standing. *See Pennsylvania State Police v. Court of Common Pleas of Bucks County,* 150 Pa. Cmwlth. 338, 615 A.2d 946 (1992), *aff'd per curiam,* 533 Pa. 324, 623 A.2d 814 (1993) (State Police play only ministerial part in collecting criminal data, which is not sufficient to confer standing). Consequently, Troutman lacks any statutorily conferred standing to request this Court to set aside the Administrative Order in question.

In addition, by dismissing Troutman's exceptions following a hearing before a three-judge panel, the common pleas court effectively confirmed a decree *nisi,* making the Administrative Order a final injunctive order. A final injunctive order is enforceable through contempt proceedings, as noted in the Administrative Order itself. No Rule to Show Cause why Troutman should not be held in contempt has been issued according to the record. Indeed, there is nothing in the record to indicate that Troutman has not complied with the Administrative Order. As such, there is

---

4. Direction to file statement of matters complained of. The lower court forthwith may enter an order directing the appellant to file of record in the lower court and serve on the trial judge a concise statement of the matters complained of on appeal no later than 14 days after entry of such order. Pa. R.A.P. 1925(b).

5. The Criminal Records Act states: "District attorney's notice.—The court shall give ten days prior notice to the district attorney of the county where the original charge was filed of any applications for expungement under the provisions of subsection (a)(2)." 18 Pa.C.S. 9122(f).

no controversy before this Court. Therefore, Troutman's appeal is quashed.

█ As a final matter, this Court properly has jurisdiction to consider Troutman's challenge because, as discussed above, the common pleas court entered a final ruling in the matter. This Court has exclusive jurisdiction over appeals from final orders of the courts of common pleas by or against the Commonwealth government, including Commonwealth officers acting in an official capacity. 42 Pa.C.S. § 762. A judge of a court of common pleas, when sued in his or her official capacity is either the Commonwealth government or an officer of said government. *Brown v. Taylor,* 90 Pa. Cmwlth. 23, 494 A.2d 29, 32 (1985).

Accordingly, the order of the Court of Common Pleas of Berks County in the above-captioned matter is affirmed.

### ORDER

AND NOW, this 13th day of September 2005, the order of the Court of the Common Pleas Court of Berks County in the above-captioned matter is affirmed.

Dissenting Opinion by Judge LEAVITT.

Respectfully, I dissent. The majority holds that this Court has jurisdiction over the appeal brought by the Clerk of Courts but quashes it for lack of standing. I believe the law requires the exact opposite conclusion on both issues.

The center of this controversy is an administrative order of the Court of Common Pleas of Berks County that directs the Clerk of Courts to purge the court's public docket of any entries relating to certain ARD defendants and states that failure to do so "may subject the Clerk of Courts, James Troutman, to contempt proceedings." Administrative Order No. 1–MD–2003, November 3, 2003. The majority does not discern any "adverse effect to Troutman, beyond that of the common citizen's interest in seeing the law followed." Opinion at 5.[1] The Clerk of Courts, James Troutman, not the body politic, faces the possibility of jail time should the Clerk fail to carry out the court's directive. The Clerk's interest is substantial, direct and immediate.

The Clerk's standing, however, is founded not on the threat of contempt but, rather, on the duties of his office. Only the Clerk of Courts, not the common citizen, has had the responsibility conferred upon him by the Pennsylvania Constitution to maintain court records for public access. PA. CONST. sched. art. 5, § 15.[2] The particulars of this constitutional duty are established in the Judicial Code.[3] They are also

---

1. I also disagree with the majority's determination that the Clerk's appeal does not present a controversy because the Clerk had not yet been held in contempt for failure to comply with an expungement order. The Clerk is not required to incur court sanctions in order to resolve the issue of whether the Criminal History Records Information Act prohibits the court of common pleas from ordering the Clerk to seal court records. To follow this logic, no defendant could ever challenge an injunction order unless, or until, the defendant decided to violate the order and become the subject of contempt proceedings.

2. The Pennsylvania Constitution requires a clerk of courts to maintain the "records, books and dockets" of each case filed in a court of common pleas. PA. CONST. sched. art. 5, § 15.

3. The Judicial Code requires that all documents relating to "[c]riminal matters including all related motions and filings" be filed in the office of the clerk of courts. 42 Pa.C.S. § 2756(a)(1). The powers and duties of the clerk of courts include the "duties as may ... be ... imposed upon the office by *law*, ... order or rule of court...." 42 Pa.C.S. § 2757(5) (emphasis added). One such law is

addressed in the Pennsylvania Rules of Criminal Procedure, which direct a clerk of courts to "maintain the criminal case file for the court of common pleas" and a "list of docket entries" PA. R.CRIM. P. 113(A),(B). The duties conferred on the Clerk of Courts by our Constitution, by our Legislature and by our Supreme Court give him an interest in an administrative order that directs him to purge the very records he is duty bound to maintain.[4]

The majority's contrary conclusion turns entirely on *Pennsylvania State Police v. Court of Common Pleas of Bucks County*, 150 Pa.Cmwlth. 338, 615 A.2d 946 (1992). In that case, the State Police sought to have a court order expunging the retail theft records of Charlene Brieger set aside because the State Police had not been given notice or an opportunity to be heard in her expungement hearing. This Court held, quite properly, that the State Police had no interest in the substantive merits of whether, in a particular case, an expungement order should be entered. We reasoned that its duty to maintain a central repository of criminal records did not give the State Police an interest in whether a particular expungement order was meritorious. Thus, we held that the State Police lacked standing to participate in each and every expungement hearing. This holding does not speak to the instant controversy.[5]

The Clerk of Courts does not challenge the merits of a particular expungement order, and he does not seek the right to participate in the merits of any or all expungement proceedings. The Clerk challenges, rather, the scope of expungement orders in Berks County. He does so because Section 9122(e) of the Criminal History Records Information Act, states that "[p]ublic records listed in Section 9104(a) ... *shall not be expunged.*" 18 Pa.C.S. § 9122(e) (emphasis added). Among the public records listed in Section 9104(a) are

> *Any* documents, *records,* or indices prepared or maintained by or filed *in any court* of this Commonwealth, including but not limited to the minor judiciary.

18 Pa.C.S. § 9104(a) (emphasis added).[6] Expungement requires the removal of all "trace[s] or indication that such [criminal history] information existed." 18 Pa.C.S. § 9102. It cannot be disputed that in Section 9122(e) the General Assembly has limited the scope of expungement orders. If neither the Clerk of Courts nor a common citizen can raise the issue of whether purging certain criminal court records in Berks County exceeds the statutory limits on expungement, then who can? [7]

the Criminal History Records Information Act.

**4.** This interest would be apparent if, for example, a president judge should issue an administrative order directing that the files of all criminal defendants, whose last name began with the letter "R," be removed from public access.

**5.** *State Police* teaches that a clerk's duty to maintain court documents does not authorize a clerk to judge the merits of those documents so filed. This means, for example, that a clerk of courts may not refuse to accept a complaint for filing because he believes it fails to state a cause of action. It does not teach that a clerk of courts has no interest in the

maintenance of, and public access to, court records.

**6.** Lest there be any doubt that the court records listed in Section 9104(a) are public records, 18 Pa.C.S. § 9104(b) states:

> Court dockets, police blotters and press releases and information contained therein shall, for the purpose of this chapter, be considered public records.

**7.** The flaw in the majority's analysis is readily apparent when one looks at other types of public records that may not be expunged. They include, for example, "press releases that contain criminal history record information and are disseminated contemporaneous

On the question of the Clerk's standing, our Supreme Court's holding in *Dauphin County Public Defender's Office v. Court of Common Pleas of Dauphin County*, 578 Pa. 59, 849 A.2d 1145 (2004) is dispositive. In that case, the President Judge of the Court of Common Pleas of Dauphin County issued an administrative order directing the Public Defender to use the Federal poverty guidelines to determine whether a criminal defendant was eligible for appointment of a public defender. Prior to the issuance of this order, the Public Defender determined eligibility by using a variety of criteria, only one of which was the applicant's income. Believing that the court's intrusion upon the operation of his office violated the Public Defender Act, Act of December 2, 1968, P.L. 1144, *as amended*, 16 P.S. §§ 9960.1—9960.13, the Public Defender petitioned the Pennsylvania Supreme Court for a writ of prohibition. The Supreme Court rejected the court's argument that the Public Defender lacked standing.[8]

The Supreme Court reasoned that a public defender has a statutory duty to provide legal representation to eligible criminal defendants, which gave him standing to challenge an administrative order that was alleged to interfere with that statutory duty. The Supreme Court held that the Public Defender's interest exceeds that of the common interest of all citizens in procuring obedience to the law. *Dauphin County Public Defender*, 578 Pa. at 64, 849 A.2d at 1148. The Supreme Court established the principle that a public official may seek review of an administrative order issued by a president judge that is alleged to interfere with that official's statutory duty.

The Berks County Court of Common Pleas has concluded that the clerk of courts and the court are one, and that one is the court. The majority agrees, dismissing the clerk's duties as "merely ministerial."[9] This observation fails to account for the fact that these duties are important enough to have been assigned to an elected, constitutionally created official. I believe that *Dauphin County Public Defender* supports one conclusion: the Clerk has standing to pursue his claim that the administrative order in question interferes with his constitutional and statutory duty to maintain court records as public records.

I also disagree with the majority that this Court has jurisdiction over this controversy, which has been framed by the Clerk of Courts as a direct appeal of the denial of his exceptions to the President Judge's administrative order.[10] This is not

with the incident." 18 Pa.C.S. § 9104(a)(1). A newspaper ordered to expunge a press release, *i.e.*, to remove all traces of it, should be allowed to challenge that order. But under the majority's holding, the newspaper would lack standing because it had no interest in whether a particular criminal defendant's record should be expunged.

8. Even though the Public Defender was found to have standing, the majority cites *Public Defender* for the contrary, *i.e.*, that the public official here, the Clerk of Courts, lacks standing to seek review of an administrative order.

9. Many government functions are ministerial, but that does not mean they are not impor-

tant. The ancient writ of mandamus was developed to compel the performance of ministerial duties of government officials.

10. The majority sees this case as an appeal from the final order of the common pleas court in an action against the President Judge, and grounds our jurisdiction in the premise that the President Judge has been sued in his official capacity. The caption does not so read. Nevertheless, the majority is correct that this controversy is between the Clerk of Courts and the Court of Common Pleas of Berks County. This only supports the conclusion that the Clerk's "appeal" is really a request for a writ of prohibition.

an appeal at all.[11] The Clerk requests this Court to restrain the Court of Common Pleas from directing the Clerk to remove records from this office that, the Clerk believes, must be maintained as public records. Such a restraining order requires the issuance of a writ of prohibition. A writ of prohibition is "the means" by which a ["superior" court] exercises superintendence over [an "inferior" court] and keeps it within the limits of its rightful powers, and "jurisdiction." *Carpentertown Coal & Coke Co. v. Laird,* 360 Pa. 94, 98–99, 61 A.2d 426, 428 (1948).[12] However, only the Pennsylvania Supreme Court, not this Court, has the jurisdiction to exercise superintendency over courts of common pleas. 42 Pa.C.S. § 721(2).[13]

Again, the Supreme Court's holding in *Dauphin County Public Defender* is dispositive. Because the Public Defender showed that the court's administrative order exceeded the court's authority, the Supreme Court issued a writ of prohibition, vacating the administrative order in question. In no way did the Supreme Court intimate that, alternatively, the Public Defender could have "appealed" the administrative order to the Commonwealth Court. Here, the Clerk of Courts asserts that the Court of Common Pleas lacks authority to order court records to be expunged. The proper vehicle for resolving the Clerk's

assertion is in a writ of prohibition proceeding before the Pennsylvania Supreme Court, the only court with the authority to superintend our courts of common pleas. That resolution can be provided by a transfer of the Clerk's "appeal" to the Pennsylvania Supreme Court pursuant to PA. R.A.P. 751.[14]

The Clerk raises an important question of statutory construction. The Criminal History Records Information Act, a chapter in the Crimes Code, states that nothing "in this chapter shall be construed to apply to ... any documents, records or indices prepared or maintained by or filed in any court of this Commonwealth...." 18 Pa. C.S. § 9104(a)(2). It further provides that "[p]ublic records listed in Section 9104(a) ... shall not be expunged." 18 Pa.C.S. § 9122(e). The Clerk of Courts understands these provisions to mean that court records are beyond the scope of any expungement order. The Clerk's understanding of the statute is finally supported by the Pennsylvania Attorney General. The Court of Common Pleas of Berks County, in contrast, construes Section 9104(a)(2) to mean that court records are not subject to the limitations in Section 9122(e).

A resolution of this dispute between the Clerk of Courts and the Court of Common

---

**11.** The process followed here appears jury-rigged for this case alone. The Clerk filed "exceptions" to the administrative order. A panel of three judges issued an opinion explaining why the Clerk's exceptions were not meritorious, but it did issue an order in connection therewith. There is no final order for this Court to review.

**12.** The purpose of the writ or prohibition is not to pass upon the rights of litigants, but to manage the inferior court and prevent it from usurping jurisdictions and powers that it does not constitutionally and legally possess. *Capital Cities Media, Inc. v. Toole,* 506 Pa. 12, 19, 483 A.2d 1339, 1342 (1984).

**13.** Section 721(2) gives the Supreme Court original jurisdiction of uses of "prohibition to courts of inferior jurisdiction." This Court may issue writs of prohibition to administrative agencies but not to courts of common pleas, unless the writ is ancillary to a specific proceeding addressed to our appellate jurisdiction. *Municipal Publications, Inc. v. Court of Common Pleas of Philadelphia County,* 507 Pa. 194, 199, 489 A.2d 1286, 1288 (1985).

**14.** It provides that a court shall not quash or dismiss an improvidently filed case but, rather, transfer the matter to the proper court.

Pleas of Berks County will provide a definitive interpretation of the Criminal History Records Information Act, a matter of importance in every judicial district in Pennsylvania. Because I believe the Clerk of Courts has standing to pursue this question of law, but that this Court lacks jurisdiction to order the relief requested by the Clerk, I would transfer this matter to the Pennsylvania Supreme Court.